IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-01651-MSK-BNB

KATHY NOVOSAD, and
STEPHEN NOVOSAD, individually and as parents and
next friends of DN, a minor,

        Plaintiffs,

v.

ACB, a minor,[1]
KEITH BROWN,
LINDA BROWN,
JOHN MAJERUS,
SETH PARRISH, and
ST. VRAIN VALLEY SCHOOL DISTRICT RE1J,

        Defendants.

## ORDER GRANTING MOTION TO DISMISS
## AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE

THIS MATTER comes before the Court on a Motion to Dismiss **(#3)** filed by Defendants St. Vrain Valley School District RE1J, John Majerus and Seth Parrish pursuant to Fed. R. Civ. P. 12(b)(6). Having considered the motion, the response **(#7)**, the reply **(#10)**, and the supporting briefs **(#4, #8)**, the Court finds and concludes as follows.

### I. Jurisdiction

For purposes of determining the pending motion, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[1] According to the Complaint, ACB turned 16 years of age in May 2005.  Therefore, he remains a minor.  Pursuant to the Privacy Policy set forth in the Electronic Case Filing Procedures for Civil Cases, the caption is amended to delete reference to ACB's full name.

## II. Background

The Plaintiffs are Kathy and Stephen Novosad. They assert claims on their own behalf as well as on behalf of their minor child, DN.

### A. Allegations in the Complaint

On April 1, 2005, the Novosads' 8-year old son, DN, was in the men's locker room at the Longmont Recreation Center in Longmont, Colorado. While in the locker room, ACB, a teenager, took DN into a bathroom stall and subjected DN to "inappropriate sexual contact."

At the time of the incident, ACB was a student at Silver Creek High School, a school within the St. Vrain Valley School District ("the School District"). Prior to the incident in the locker room, ACB had been investigated by law enforcement agencies for his alleged involvement in similar incidents on at least three occasions. After such earlier incidents, a court order was issued. In accordance with that order, the School District became a party to a School Supervision and Management contract which required it to closely monitor ACB and keep him "within eyesight of a responsible adult at all times, without exception," while ACB was in the School District's custody.

The School District assigned John Majerus, a supervisor of students, and Seth Parrish, a para-educator, the responsibility of complying with the School Supervision and Management contract and "court-ordered requirement." Both Mr. Parrish and Mr. Majerus knew about the requirements of the court order and the terms and conditions of the School Supervision and Management contract. They also knew about ACB's history of inflicting harm on children while unsupervised.

Notwithstanding such knowledge, Mr. Majerus and Mr. Parrish allowed ACB and other students to use the facilities at the Recreation Center on April 1, 2005. Young children were also using facilities at the Recreation Center on such date. Mr. Parrish gave ACB express permission to go off on his own, where he was unsupervised and out of Mr. Parrish's sight. It was while he was unsupervised and out of Mr. Parrish's sight that ACB harmed DN.

**B. Allegations which would be alleged in an Amended Complaint**

The Novosads contend that they have discovered additional facts since filing the Complaint in this action and that they would allege such facts in an Amended Complaint. These alleged facts are as follows.

Between September 2002 and May 2003, ACB molested four small boys on different occasions at school. These incidents took place in a bathroom at the school and were reported to the school's principal and to the police. Juvenile delinquency proceedings followed. In addition, ACB was investigated by the Longmont Police Department and the Boulder County Sheriff's Department for two additional, similar incidents between October 2003 and April 2005.

On information and belief, the School District, Mr. Majerus and Mr. Parrish "had substantial knowledge of considerable detail through acquisition of the previous school's records, their own school records, participation in or communications regarding juvenile delinquency proceedings, records of [ACB's] therapist(s) and information supplied by [ACB's] parents[.]" When Mr. Parrish gave ACB permission to go to the bathroom unsupervised and unmonitored, he knew of at least six different sexual assaults on small boys by ACB, several of which had taken place in a bathroom at a public facility.

For purposes of determining the pending motion, the Court treats these facts as though

they were alleged in the Complaint.

### C. What is not alleged in the Complaint or Supplement

There are no allegations that specify the terms of the court order, nor the specific obligations of the School District under the School Supervision and Management contract. There are no allegations that Mr. Majerus or Mr. Parrish knew that young children, particularly boys, were present at the Longmont Recreation Center at the time ACB was there or that ACB would be in the proximity of young children. There is no allegation that Mr. Majerus or Mr. Parrish knew that ACB went into or authorized ACB to go into the men's locker room; indeed, although there is an allegation that Mr. Parrish allowed ACB to "go to the bathroom" without being accompanied, there is no allegation that Mr. Parrish knew where the bathroom was located or who might be present in the bathroom. Finally, there is no allegation that Mr Majerus or Mr. Parrish knew that DN or any other boy was in the locker room at the time ACB entered it.

### D. Asserted Claims

The Novosads assert the following claims for relief, both on their own behalf and on behalf of DN: (1) battery against ACB; (2) false imprisonment against ACB; (3) outrageous conduct against ACB; (4) negligence against ACB; (5) exemplary damages against ACB; (6) vicarious liability against ACB's parents, Keith and Linda Brown; (7) negligent supervision against Keith and Linda Brown; (8) willful and wanton conduct against Mr. Majerus; (9) willful and wanton conduct against Mr. Parrish; (10) breach of contract against the School District; (11) dangerous condition of a swimming facility against Mr. Majerus, Mr. Parrish and the School District; and (12) "danger creation" against Mr. Majerus, Mr. Parrish and the School District in violation of the Fourteenth Amendment to the United States Constitution.

The only federal claim asserted in this action is Claim 12, "danger creation." The School District, Mr. Majerus, and Mr. Parrish move to dismiss this claim on the basis that it states no claim for relief. They also request that the Court decline to exercise supplemental jurisdiction over the remaining claims, all of which arise under Colorado law. The Novosads oppose the motion.

### III.  Issue Presented

The Court must determine whether any claims should be dismissed.

### IV.  Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a claim for relief on the basis that it fails to state any claims upon which relief may be granted. There is a strong presumption against the dismissal of claims under this rule. *See Cottrell, Ltd. v. Biotrol Intern., Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). The Court accepts all well-pleaded allegations in the Complaint as true and construes them in the light most favorable to the Novosads. *See Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). Only if the Novosads can allege no set of facts in support of their claims is dismissal appropriate. *See Jojola v. Chavez,* 55 F.3d 488, 490 (10th Cir. 1995). For purposes of this analysis, the Court has considered both the allegations of the Complaint and the Novosads' supplement, as allegations that would be asserted if the Novosads were allowed to amend their Complaint.

### V.  Analysis

The School District, Mr. Majerus, and Mr. Parrish contend that Claim 12 should be dismissed because there are insufficient allegations to support a "danger creation" claim. The Novosads disagree.

Ordinarily, state actors are not liable for the violent actions of third parties. *See Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006). One exception to this general rule is the "danger creation" doctrine. *See id.* Under this doctrine, a state actor can be liable for the violent acts of a third party if: (1) he created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the state actor's conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the state actor acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience of federal judges. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1182-84 (10th Cir. 2002).

The danger creation doctrine provides a "narrow exception" to the general rule of non-liability and gives rise to a substantive due process claim. *See id; Moore*, 438 F.3d at 1042. The state actor must affirmatively act to create the danger. *See id.*; *Ruiz*, 299 F.3d at 1183. To be actionable, the state actor's conduct must impose an immediate threat of harm to a particular person or group of people, as compared to a general threat of harm to the public at large. *See Ruiz*, 299 F.3d at 1183.

The recklessness aspect of element 5 requires a "wanton or obdurate disregard or complete indifference" to a particular risk. *See DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000). This requires that the state actor either intend to cause harm, or intend to expose a particular person to an unreasonable risk of harm. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003).[2]

---

[2] In *Christiansen*, the mother, wife and child of Sean Christiansen asserted a danger creation claim against the City of Tulsa, its police chief, the city's psychological services for the police department, and several John Does. Mr. Christiansen became suidcidal and threatened to kill his wife. She telephoned 911,

To determine whether conduct shocks the conscience as required by the sixth element, the Court considers: "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." *See id.* at 1184. Ordinary negligence or knowledge that an unreasonable risk exists do not usually rise to the level of "conscience-shocking." *See id.* To meet this standard, the conduct "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *See id.* (citation and quotations omitted).

The movants contend that the Tenth Circuit held in *Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1238 n.13 (10th Cir. 1999), as well as *Graham v. Independent School Dist. No. I-89,* 22 F.3d 991, 994 (10th Cir. 1994), that a custodial relationship between the person harmed and the state actor is required. This contention is incorrect and results from confusion between the holdings and *dicta* in the cases, as well as a confusion between the "danger creation" doctrine and another basis for liability known as the "special relationship" doctrine. The "special relationship" doctrine allows for imposition of liability on a state actor for nonfeasance[3] when such person has assumed custody or control over an individual who is ultimately harmed.

---

and police responded to her apartment. There was a standoff between Mr. Christiansen and the police, who negotiated for several hours. Mr. Christiansen's mother arrived and asked to see her son; the police refused her request. After approximately 8 hours, the police launched a flexible baton into the apartment through a window. Mr. Christensen became angry and then shot himself in the head. He died the next day. The district court granted summary judgment for the defendants on the danger creation claim. The Tenth Circuit affirmed, noting that the quarantine of Mr. Christensen and the launching of the baton did not amount to deliberately wrongful conduct and did not shock the conscience.

[3] The Motion to Dismiss contains a typographical error of significant proportion. In quoting from *Sutton*, the movants referred to "malfeasance" instead of "nonfeasance." The former requires affirmative conduct; the latter does not.

*See Armijo by and through Chavez v. Wagon Mound Public Schools*, 159 F.3d 1253, 1261 (10th Cir. 1998). The case at bar does not involve claims that any Defendant had a duty to protect DN under the special relationship doctrine.

To be sure, what the Novosads allege was both tragic and unfortunate. However, the focus of the Court's analysis with regard to Claim 12 is not upon what happened to DN, but upon what risk was known or perceived by Mr. Majerus and Mr. Parrish and their conduct in the face of such knowledge. With this focus in mind, the Court concludes that the allegations, assumed to be true, are not sufficient to support a *prima facie* "danger creation" claim against the School District, Mr. Parrish or Mr. Majerus.

Construing the allegations in the light most favorable to the Novosads, the most that can be said is that Mr. Parrish did not comply with the School District's contractual obligation to keep ACB within eyesight of a responsible adult. The Novosads contend that Mr. Majerus and Mr. Parrish should have known that there were children at the recreation center and that they should not have left ACB unsupervised at any time. This may be correct, but it is insufficient to state a "danger creation" claim.

The "danger creation" claim requires allegations that the Defendants actually knew that there was a risk that in taking ACB to the recreation center and in allowing him to go to the bathroom unaccompanied, that DN or some other child would be harmed. In addition there must be an allegation that with full knowledge of such risk, the Defendants disregarded it. Had this been a situation where Mr. Majerus confirmed or saw young children at the Recreation Center, recognised that they would use the bathroom and approved of the decision to allow ACB to go into the bathroom alone, or where Mr. Parrish watched young boys go into the locker room, then

allowed ACB to go into the locker room, alone, then there might be a plausible "danger creation" claim.

But there is no allegation that Mr. Parrish or Mr. Majerus intended or recognised a risk of harm to DN or any other child at the Recreation Center. Although they may have known of ACB's past behavior, the Novosads have not alleged that Mr. Majerus or Mr. Parrish knew that there was any child at the Recreation Center who might have been vulnerable to ACB's behavior. There is no allegation that these Defendants saw or knew that there were young children at the Recreation Center, that they knew the location of the bathroom facilities, or that they saw young children in the vicinity of or in the locker room where the bathroom facilities were located. The Court concludes that the facts alleged are insufficient to make the *prima facie* showing necessary for elements four, five and six of the "danger creation" claim.

Having considered the Novosads' factual supplementation, there is no utility in allowing further amendment of the Complaint. With regard to the state law claims, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over such claims.

**IT IS THEREFORE ORDERED** that

(1) The Motion to Dismiss **(#3)** is **GRANTED**.

(2) Claim 12 is dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The remaining claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

(3)   The Clerk of Court is directed to close this case.

Dated this 17th day of May, 2006

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge